UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MATTHEW BUSH,

        Plaintiff,

v.                              Case No.: 8:07-cv-02087-T-24-AEP

RAYTHEON COMPANY,

        Defendant.

_____/


## ORDER AWARDING
## ATTORNEY'S FEES

The Court now considers Defendant Raytheon Company's motion for attorney's fees in the amount of $60,404.64, which Plaintiff Matthew Bush opposes. (Docs. 85, 90.)

After considering Bush's arguments that Raytheon's lawyers charged unreasonably high hourly rates and billed excessive hours, and after considering the nature of this award under Florida law, the Court awards Raytheon attorney's fees in the amount of **$42,358.68.**

## BACKGROUND

In 2007, Plaintiff Matthew Bush filed a three-count Complaint against his former employer, Defendant Raytheon Company, alleging that (1) Raytheon violated the Florida Whistleblower Act ("FWA") by disciplining, demoting, and then firing Bush after he objected to Raytheon's improper use of government funds; (2) Raytheon defamed Bush by submitting false reports of his work performance to a prospective employer and other Raytheon employees; and (3) Raytheon tortiously interfered with Bush's business relationships, causing Bush to lose an

1

offer of employment.  (Doc. 2.)

The allegations in the Complaint rested in large part on a record created during a nine-day arbitration hearing that ended before Bush filed this lawsuit.  The arbitration proceeding generated more than 4,000 pages of testimony and included almost 200 exhibits.  Raytheon prevailed at the arbitration, but Bush elected not to be bound by the arbitrator's decision and brought this case in state court in November 2007.  (Doc. 21.)  The same month, Raytheon removed the case to federal court.  (Doc. 1.)

In September 2009, the Court granted summary judgment for Raytheon on all three counts.[1]  Raytheon then moved for attorney's fees and costs.  The Court in December 2009 ruled it would award Raytheon attorneys' fees as the prevailing party under Florida Statute § 448.104, which allows—but does not require—a court to award attorney's fees to the prevailing party in a FWA case.  The Court limited Raytheon's award to those fees incurred to defend itself from the FWA claim, not the defamation and tortious interference claims.  (Doc. 84.)  The Court rejected Raytheon's argument that the other two claims were inextricably linked to the FWA claim.  Id.

In exercising its discretion to award Raytheon attorney's fees, the Court considered that Bush unnecessarily prolonged this case, even though the arbitration gave Bush an opportunity to evaluate the strength of his claims and end the dispute without protracted litigation.  Instead of resolving the case efficiently, Bush forced Raytheon to defend itself from a tortious inference claim that he dropped in his summary judgment response, only after Raytheon had spent months and thousands of dollars on discovery and a summary judgment motion to defend itself from the claim.  In addition, the Court found that Bush's claim, while not frivolous, was nearly frivolous

---

[1] On April 12, 2010, the Eleventh Circuit affirmed the Court's summary judgment decision.  Bush v. Raytheon Co., No. 09-15156, 2010 WL 1427611 (11th Cir. April 12, 2010).

and lacked merit. The Court decided that awarding Raytheon attorney's fees would not deter worthy whistleblowers and might, in fact, promote the remedial purpose of the Whistleblower Act by discouraging meritless claims.

In setting attorney's fees, however, the Court said it would be mindful of the disparity in wealth between Raytheon, a multinational corporation with $23.2 billion in sales in 2008, and Bush, an engineer who earned $48 an hour at Raytheon. Based on that remark, Raytheon voluntarily reduced the amount of attorney's fees it seeks by $73,827.90, or about 55 percent of the total $134,232.54 that Raytheon paid to defend itself from the FWA claim.

Raytheon seeks attorney's fees to pay for the work of three attorneys and three paralegals in the Tampa office of the Greenberg Traurig, LLP. Not including the fees discounted by Raytheon and the fees removed to defend the other counts of the Complaint, the professionals at Greenberg Traurig LLP billed Raytheon the following amounts:

|  | Total Hours | Total Fees |
|---|---|---|
| **Attorneys** |  |  |
| Peter Zinober | 34.4 | $18,211.63 |
| Shane Muñoz | 218.1 | $88,606.70 |
| Heather Jarrell | 167.5 | $49,802.65 |
| **Paralegals/Staff** |  |  |
| Sara Whitehead | 18.9 | $3,780.00 |
| Jonelle Turner | 0.1 | $15.00 |
| Deena Russella | 5.3 | $799.18 |
| Gigi Carcamo | 81 | $16,183.15 |
| Michael Dyckman | 0.4 | $74.00 |
| **TOTAL** | **525.8** | **$177,472.31** |

In addition, Raytheon provided a breakdown of its fees by the type of work:

| Work | Fees for All Claims | Reductions | Fees for FWA Claim |
|---|---|---|---|
| Removal | $ 3,758.50 | | $ 3,758.50 |
| Answer & Affirm. Defenses | $ 7,604.50 | Reduced to 33.3% | $ 2,532.30 |
| Case Management/Planning | $ 10,199.78 | | $ 10,199.78 |
| Discovery - Depositions | $ 9,105.17 | | $ 9,105.17 |
| Discovery - Written | $ 16,751.30 | | $ 16,751.30 |
| Discovery - Experts | $ 6,678.50 | | $ 6,678.50 |
| Mediation | $ 8,471.89 | Reduced to 33.3% | $ 2,821.14 |
| Summary Judgment | $ 85,008.67 | Reduced to 80% | $ 68,006.94 |
| Pre-trial Preparation | $ 23,261.00 | Reduced to 33.3% | $ 7,745.91 |
| Bill of Costs/Attorney's Fees | $ 6,633.00 | | $ 6,633.00 |
| **Total** | **$ 177,472.31** | | **$ 134,232.54** |

## ANALYSIS

Although this Court applied Florida law to determine it would award Raytheon attorney's fees as the prevailing party under Florida Statute § 448.104, it applies the federal lodestar method to calculate the amount of reasonable fees.[2] To calculate the lodestar, the Court multiplies the number of reasonable hours spent working on the case by a reasonable hourly rate for each attorney and paralegal.[3] But making an attorney's fee award is not as simple as

---

[2] The Florida Supreme Court has adopted the federal lodestar method of calculating attorney's fees, with some exceptions. Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985), modified, Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828 (1990). Even if the Court applied Quanstrom, the calculation of fees would essentially be the same under the federal lodestar method. Under Quanstrom, a claim for a retaliatory firing under the Whistleblower's Act would be classified either as a "public interest" case or as a tort/normal attorney's fee case. See Quanstrom, 555 So. 2d at 833-35 (dividing attorney fee's cases into three categories, each with different criteria for calculating a fee). As a "public interest" case, we would apply the 12 factors in Johnson v. Georgia Hwy. Express, 488 F.2d 714 (5th Cir. 1974). Quanstrom, 555 So. 2d at 833-34. These factors, however, also go into our calculation of a reasonable hourly rate and a reasonable number of hours in calculating the federal lodestar amount. As a tort/normal attorney's fees case Quanstrom directs the court to calculate the lodestar amount of fees. Id. at 834-35.

[3] See Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000).

multiplying two figures together.  Because "there is no precise rule or formula" for making an attorney's fee award,[4] computing a fee award "is necessarily an exercise of judgment."[5]

## A.    Reasonable Hourly Rate

The Court must first determine that the lawyers charged a reasonable hourly rate.  Under the federal lodestar method, courts determine what constitutes a lawyer's reasonable hourly rate by looking at "'the prevailing market rates in the relevant community.'"[6]  The Court, like the market, considers subjective factors, such as the ones set out in Florida Patient's Compensation Fund v. Rowe,[7] in setting a reasonable rate for different type of legal work.  As the Supreme Court has noted, "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult."[8]  Therefore, "[i]n seeking some basis for a standard, courts properly have

---

[4] Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

[5] Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436).

[6] Perdue v. Kenny A., __ S.Ct. __, 2010 WL 1558980, at *5-6 (April 21, 2010) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)).

[7] 472 So. 2d 1145 (Fla. 1985). The Florida Supreme Court has said that the Rowe factors are essentially identical to the Johnson factors set out by the Fifth Circuit. Id. at 1150 nn.5-6. The Johnson factors are:

| (1) | the time and labor required; |
| (2) | the novelty and difficulty of the questions; |
| (3) | the skill requisite to perform the legal service properly; |
| (4) | the preclusion of employment by the attorney due to the acceptance of the case; |
| (5) | the customary fee; |
| (6) | whether the fee is fixed or contingent; |
| (7) | time limitations imposed by the client or the circumstances; |
| (8) | the amount involved and the results obtained; |
| (9) | the experience, reputation, and ability of the attorneys; |
| (10) | the 'undesirability' of the case; |
| (11) | the nature and length of the professional relationship with the client; and |
| (12) | awards in similar cases." |

Hensley v. Eckerhart, 461 U.S. 424, 430, n.3 (1983).

[8] Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

required prevailing attorneys to justify the reasonableness of the requested rate or rates."[9]

Raytheon's lawyers charged hourly rates that topped out at $535 an hour for partner Peter Zinober, a highly-regarded lawyer with more than 40 years of experience. Associate Heather Jarrell, who had about two years of experience when she started work in this case in 2007, charged the lowest rate at $240 an hour. Counsel Shane Muñoz charged between $250 and $415 an hour for work. The four paralegals on this case charged between $150 to $200 an hour. During the three-year life of the case, the attorney's billable rate increased substantially. Zinober's hourly rate rose from $385 in 2007 to $490 in 2008 to $535 in 2009. Muñoz's rate also rose from $250 in 2007 to $390 in 2008 to $415 in 2009 during the same period, while Jarrell's rates went from $240 to $270 to $305.

By comparison, the rates for the paralegals remained basically unchanged. Paralegal Gigi Carcamo charged hourly rates of $190 in 2007, $175 in 2008, and $200 in 2009. Raytheon does not explain why Carcamo's rate fell in 2008, only to jump to a higher rate in 2009. The other paralegals charged either $150 an hour or $200 an hour. Librarian and researcher Michael Dyckman charged $185 an hour in 2009.

Raytheon filed two affidavits to support its claim that its professionals charged reasonable hourly rates. Zinober, seeking payment for his own work, filed one of the affidavits. John E. Phillips, a partner at the law firm of Phelps Dunbar LLP who is practice coordinator of the Tampa office's labor and employment group, filed the other affidavit. Phillips states in his affidavit that the hourly rates were reasonable for this type of case.[10]

---

[9] Villano, 254 F.3d at 1311.

[10] The Court notes that Phillips' affidavit appears to be, at least in part, a form affidavit as some items contain a blank to be filled in and include a parenthetical that says, "[Insert dates here.]"

Bush objects that the rates are unreasonably high. But Bush acknowledges that he could not find any attorney to sign an affidavit attesting that the rates were unreasonably high, even though his counsel approached several attorneys to do so. Instead, Bush offers a chart that purportedly shows nationwide billing rates from a variety of law firms located outside the Middle District of Florida. The Court does not find this chart helpful, both because Bush offered no information about the reliability of the information in the chart, which he printed off the Internet, and because the chart lists nationwide billing rates. The Court's inquiry must focus on hourly rates in Tampa, the relevant legal community for this case.[11] Bush argues that Raytheon's hourly rates in Tampa should not have climbed as steeply as they did because nationwide billing rates during the same years did not increase as fast. As proof, he cites to an article in the *National Law Journal*, which he states that he attached to his response as Exhibit B. However, Exhibit B is a chart, not an article. And the chart includes no information about the rate of increase of hourly rates nationwide. Therefore, the Court must disregard Bush's argument.

Bush's other argument is also unsupported by the record. Bush claims that Raytheon presented no evidence that it actually paid the attorney's fees submitted. In fact, Raytheon's motion states that the company paid $293,467.50 from November 14, 2007 to September 23, 2009 to defend itself from Bush's lawsuit.[12] The billing invoices attached to the motion also show the date that Greenberg Traurig LLP last billed Raytheon and the date of Raytheon's last payment.[13] The Court does not doubt that Raytheon paid these amounts.

---

[11] The relevant legal community is the area where the case is pending. <u>Am. Civil Liberties Union of Ga. v. Barnes</u>, 168 F.3d 423, 437 (11th Cir. 1999).

[12] Doc. 85 at 3.

[13] Doc. 85-2.

Courts are considered experts on the question of reasonably attorney's fees, and, therefore, a court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without aid of witnesses as to value."[14] The Court relies on its own knowledge and experience, the affidavit filed by John E. Phillips in support of the fees, and the inability of defense counsel to find *any* attorney who would challenge Raytheon's fees to determine that the market supports these hourly rates, when charged to Raytheon, for work done in this case. All three lawyers have impeccable credentials, and performed exceptional work in this case. Zinober, in particular, is considered one of Tampa's foremost attorneys in employment law. He leads his firm's global labor and employment practice group, overseeing 111 lawyers in offices across the United States and in Europe. The Court does not doubt that corporate clients would pay Zinober and his colleagues the highest fees in this market for their work.

While the Court finds that the market would support the attorneys' hourly rates, it does not find it reasonable that Bush should pay these rates. Bush should not have to pay Raytheon to hire the best lawyers at the highest rates to dispatch with this type of case. One does not need to field Derek Jeter to beat the double-A Portland Sea Dogs. Because Bush's lawsuit possessed almost no merit, a less experienced—and less expensive—lawyer could have handily won the case. Therefore, the Court must objectively consider the "novelty and difficulty of the question," and "the skill [needed] to perform the legal service properly" to set a reasonable hourly rate.[15]

In another context, the Supreme Court has found that a reasonable fee is "a fee that is

---

[14] Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (internal citations omitted).

[15] Rowe, 472 So. 2d at 1155 nn.5-6.

sufficient to induce a capable attorney to undertake the representation of a meritorious [] case."[16]

Like the fee-shifting provision in 42 U.S.C. § 1988 and other federal and state statutes, the discretionary fee-shifting provision of the Florida Whistleblower Act exists to entice lawyers to bring whistleblower retaliation cases in the public interest. While fee-shifting statutes help lure attorneys into these cases with the promise of a reasonable fee, the statutes are not supposed to offer the prize of a windfall. As the Supreme Court said about the fee-shifting provision of the Clean Air Act, 42 U.S.C. § 7401, et seq.:

> These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws.[17]

Like these statutes, the FWA protects employees from retaliation so they may call attention to violations of state and federal laws.[18] "The whistleblower's statute establishes Florida's public policy in favor of promoting the disclosure of wrongdoing and the protection of those who make such disclosures. . . ."[19] The fee-shifting provision of the FWA permits an attorneys to receive a reasonable fee for bringing a meritorious claim or, as in this case, defending a client from a meritless lawsuit. A reasonable fee in this case should attract competent counsel, not the best counsel money can buy.

---

[16] Perdue v. Kenny A., __ S.Ct. __, 2010 WL 1558980, at *6 (April 21, 2010) (citing Pennsylvania v. Delaware Valley Citizens' Council for Clear Air (Delaware Valley I), 478 U.S. 546, 565 (1986)).

[17] Delaware Valley I, 478 U.S. at 565.

[18] The Golf Channel v. Jenkins, 752 So. 2d 561, 562 (Fla. 2000).

[19] Bell v. Georgia-Pacific Corp., No. 5:04-cv-50-OC1-GRJ, 2005 WL 1618223, at *1 (M.D. Fla. July 6, 2005).

Therefore, the Court reduces Zinober's rate to **$250.00** an hour, Muñoz's rate to **$200.00** an hour, and Jarrell's rate to **$150.00** an hour.

While the Court does not doubt that the paralegals and other professional in this case also possess excellent credentials and performed superb work, the Court cannot attest to their experience and skill. Moreover, Raytheon did not provide the Court with information about their backgrounds. Therefore, the Court does not know if these professionals are first-year paralegals or veterans. Without this information, the Court must award the paralegals rates in line with rates for paralegals of average experience and skill. Based on its knowledge of hourly rates for paralegals in this legal market,[20] the Court finds that the appropriate hourly rates for these paralegals should be **$65** an hour.

## B.  Reasonable Number of Hours

### 1.  *Documentation of Work*

When moving for attorney's fees, the party seeking fees bears the burden of documenting hours and reasonable rates.[21] Each entry "ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."[22] Because the burden rests with Raytheon (and because Raytheon seeks fees to calculate its attorney's fees), any error that

---

[20] See Muegge v. Heritage Oaks Gulf & Country Club, Inc., No. 8:05-cv-354-T-24-MAP, 2006 WL 1678840, at *4 (M.D. Fla. June 16, 2006) (finding a $65 hourly rate for a paralegal to be reasonable). See also Philip Ledington, Inc. v. Assurance Co. of Am., No. 2:06-cv-208, 2007 WL 2714095, at *4 (M.D. Fla. 2007) (approving $60 hourly rates for legal assistants with less then three years of experience), Wilson v. Dep't of Children & Families, No. 3:02-cv-357-J-32-TEM, 2007 WL 1100469, at *4 (M.D. Fla. ) (finding a $65 hourly rate for a paralegal to be reasonable); Pyczynski v. Kirkland's Stores, Inc., No. 6:07-cv-802-Orl-22-KRS, 2008 WL 544864, at *3 (M.D. Fla. Feb. 26, 2008) (approving a $95 hourly rate for a paralegal with nine years experience, and approving a $65 hourly rate for an administrative assistant who did basic paralegal work)

[21] Norman, 836 F.2d at 1303.

[22] Id.

prevents the Court from assessing the time claimed should be held against Raytheon.

In several instances, the Court found that Raytheon's affidavit for attorney's fees did not match its invoices. (Docs. 85-1, 85-2.) Even though typographical errors may account for some of these discrepancies, the Court will not allow these charges against Bush. In other instances, a charge appeared on the affidavit that did not appear at all in Raytheon's bill. In these cases, the Court has not allowed the charges.

In total, before making other reductions, the Court reduces Raytheon's attorney's fees for lack of documentation by **$7,997.23**, for the following entries:

| Date | Category | Name | Amount Reduced |
|------|----------|------|----------------|
| 11/19/2007 | Answer | Heather Jarrell | $264.00 |
| 12/3/2007 | Answer | Shane Muñoz | $75.00 |
| 1/14/2008 | Answer | Shane Muñoz | $78.00 |
| 2/11/2008 | Answer | Shane Muñoz | $156.00 |
| 2/14/2008 | Case Man. | Gigi Carcamo | $70.00 |
| 2/29/2008 | Case Man. | Heather Jarrell | $162.00 |
| 2/29/2008 | Case Man. | Shane Muñoz | $195.00 |
| 1/30/2009 | Case Man. | Peter Zinober | $214.00 |
| 3/31/2009 | Case Man. | Shane Muñoz | $41.50 |
| 6/18/2009 | Sum. Jud. | Heather Jarrell | $1,606.73 |
| 8/3/2009 | Pre-trial Prep. | Shane Muñoz | $1,079.00 |
| 8/21/2009 | Pre-trial Prep. | Shane Muñoz | $3,375.00 |
| 5/8/2009 | Case Man. | Gigi Carcamo | $360.00 |
| 5/11/2009 | Case Man. | Peter Zinober | $53.50 |
| 7/14/2009 | Pre-trial Prep. | Peter Zinober | $267.50 |
| **TOTAL** | | | **$7,997.23** |

2. *Billing Judgment*

In determining a reasonable amount of hours, the Court must ensure that the fee applicant exercised good "billing judgment."[23] This means that the party cannot bill for "excessive,

---

[23] Hensley, 461 U.S. at 434.

redundant, or otherwise unnecessary" hours that would be unreasonable to bill a client.[24]  Bishop argues that Raytheon's counsel billed excessive hours in four ways.

First, Bush claims that Raytheon's counsel billed excessively by failing to seek his consent—which he claims he would have freely given—to remove the case to federal court. Even without his consent, Bishop claims that Raytheon did not need to do any research to file a notice of removal.  The Court does not agree that Raytheon billed excessively for the removal. Raytheon could not have relied on Bush's consent for removal since consent would not give the Court subject matter jurisdiction over a controversy of less than $75,000.  Raytheon acted appropriately in researching whether the amount in controversy in this Complaint exceeded $75,0000 and permitted it to seek removal.  Raytheon's lawyers billed a reasonable amount to remove the case.

Second, Bush claims that Raytheon should have billed "at most" 30 hours on its summary judgment motion.  Such an assertion underscores that Bush and his counsel do not understand the time and care needed to produce legal work.  Therefore, the Court is not surprised that Bush's counsel has failed to file an affidavit from counsel attesting that Raytheon billed excessively on its summary judgment motion, even though Bush promised the Court that such an affidavit would be forthcoming.  (Doc. 90 at 2.)  It should have taken far more than 30 hours for lawyers on either side of this case to just review the 4,000 pages of deposition testimony and more than 200 exhibits.  Counsel would need more time to research and cite check case law, and to draft and re-draft a well-organized and persuasive motion.  Quality legal work takes time—time that Raytheon's lawyers spent and Bush's lawyer did not.  In fact, Raytheon needed

---

[24] Barnes, 168 F.3d at 428.

to spend more time on summary judgment because of the poor quality of Bush's summary judgment response. Because Bush filed a disorganized response riddled with typographical errors, incorrect and missing citations, and references to inadmissible evidence, Bush forced Raytheon to file a motion to strike. This further added to the cost of litigation. Given this, Raytheon's lawyers billed a reasonable amount on summary judgment.

Third, Bush claims that Raytheon billed excessively to prepare for mediation since "virtually no preparation" was required. This argument also fails to appreciate that preparation is required in virtually all aspects of litigation, particularly at a session that could have efficiently resolved this dispute. The Court is not surprised that lawyers who did not attend mediation would nevertheless bill hours to prepare for mediation. The Court finds that Raytheon's lawyers billed a reasonable amount to prepare for and participate in mediation.

However, the Court does agree with Bush that he should not be required to pay for the cost of seeking an expert to testify about his failure to mitigate his damages. While Raytheon was well-advised to prepare fully for trial in the event they did not succeed at summary judgment, it was not necessary for them to obtain an expert on damages given the nature of this case. Therefore, the Court will reduce Raytheon's attorney's fees by **$6,678.50**.

3. _Fees for Other Claims_

Because the Court ruled that Raytheon may obtain attorney's fees only to defend itself from the FWA claim, Raytheon reduced by 33.3 percent the amount sought for filing an answer and affirmative defenses, for mediation, and for pre-trial preparation. Similarly, it limited the amount it sought for discovery. Raytheon only sought 80 percent of the cost of summary judgment since Raytheon's summary judgment motion and related motions dealt primarily with

the FWA claim.

But to limit fees to the FWA claim only, the Court finds that Raytheon should only obtain 33.3 percent of its charges for removal of the lawsuit and for case management of the case. In addition, because Raytheon's summary judgment motion and motion to strike dealt with the two other claims in this case, the Court finds that Raytheon should only receive 50 percent, rather than 80 percent, of these fees. This percentage more accurately reflects the amount of time spent solely on the FWA claim.

In addition, the Court finds that Raytheon should only obtain 33.3 percent of its fees for its work to obtain attorney's fees. Doing otherwise would allow Raytheon to obtain collaterally what it could not obtain directly. But this same distinction does not hold true for costs. By awarding Raytheon fees to obtain costs, Raytheon may obtain 100 percent of the attorney's fees spent to obtain costs.

## C.      Disparity in Wealth Between Parties

In awarding attorney's fees, the Court has been mindful of the disparity in wealth between the two parties. But Bush asks the Court to go one step further. He wants the Court to reduce or eliminate Raytheon's attorney's fees because he claims he cannot afford to pay the fees. The Court declines this suggestion.

Bush filed this lawsuit, forcing Raytheon to incur substantial expense to defend itself from meritless accusations. Bush continued to litigate even after an arbitration proceeding produced an extensive record that allowed Bush to evaluate the strengths and weaknesses of his case. By persisting with this case, he must take responsibility for the costs he inflicted unnecessarily on the Defendant.

In addition, Bush has not established that he is unable to pay Raytheon's attorney's fees. In his affidavit, Bush stated that he earned $48 an hour as an engineer at Raytheon. After Raytheon fired him, Bush continued to work and earned less than $20 an hour, or less than $40,000 a year. (Doc. 90-3.) By his own account, Bush earns a middle-class living and, because of his engineering expertise, has the potential to earn substantially more money. In addition, Bush does not disclose in his affidavit what joint income he may possess. (He does say, however, that his wife works and that her job makes it impractical for him to relocate.) Nor does Bush, who lives in a waterfront house in Madeira Beach, disclose what our assets he may hold. Bush did not file any documents, such as an income tax return or a financial statement, that show that he would be unable to pay Raytheon's attorney's fees.

Instead, Bush spends most of his affidavit arguing that the Court should reduce his attorney's fees because his actions as a whistleblower "saved" taxpayers more than $900,000. The Court cannot credit this argument, which Bush made without success at arbitration, at summary judgment in this court, and on appeal at the U.S. Court of Appeals.

The Court will not reduce Raytheon's attorney's fees further based on Bush's claim of poverty.

**D.** **Summary**

The following charts, as well as the chart attached to this Order, summarize the Court's adjustments to Raytheon's request for attorney's fees. The Court incorporates the attached chart into this Order.

The following chart breaks down the allowed attorney's fee by type of work:

| Work | Fees for FWA Claim | Comments |
|---|---|---|
| Removal | $900.41 | Reduced to 33.3% |
| Answer & Affirmative Defenses | $1,343.20 | Reduced to 33.3% |
| Case Management/Planning | $1,384.19 | Reduced to 33.3% |
| Discovery - Depositions | $4,431.50 | |
| Discovery - Written | $8,013.50 | |
| Discovery - Experts | $0.00 | |
| Mediation | $1,471.52 | Reduced to 33.3% |
| Summary Judgment | $20,547.50 | Reduced to 50% |
| Pre-trial Preparation | $2,790.72 | Reduced to 33.3% |
| Bill of Costs/Attorney's Fees | $1,476.14 | Fees for Fees Reduced to 33.3%. Fees for Costs at 100% |
| **Total** | **$42,358.68** | |

The following chart breaks down the allowed fees by professional:

| | Total Hours | Total Fees |
|---|---|---|
| **Attorneys** | | |
| Peter Zinober | 17.1 | $4,266.49 |
| Shane Muñoz | 106.8 | $21,356.09 |
| Heather Jarrell | 87.9 | $13,189.38 |
| **Paralegals/Staff** | | |
| Sara Whitehead | 9.0 | $587.13 |
| Jonelle Turner | 0.0 | $2.17 |
| Deena Russella | 1.7 | $112.66 |
| Gigi Carcamo | 43.8 | $2,844.76 |
| Michael Dyckman | 0.0 | $0.00 |
| **TOTAL** | **266.3** | **$42,358.68** |

## **CONCLUSION**

Accordingly, Defendant Raytheon Company's motion for attorney's fees (Doc. 85) is

**GRANTED** to the extent that the Court orders Plaintiff Matthew Bush to pay Defendant

Raytheon Company attorney's fees in the amount of **$42,358.68.**

**IT IS SO ORDERED.**

Done in Tampa, Florida on May 21, 2010.

SUSAN C. BUCKLEW
United States District Judge